[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This decision dissolves the fourteen-year marriage of Donna and Paul Barnas. As the parties have previously entered into a court-approved stipulation regarding custody and visitation of their minor children, this memorandum of decision will address financial questions — allocation of marital property and debt, alimony, child support, and payment of counsel fees. The Judicial District of Stamford-Norwalk referred the case to the regional family trial docket for trial of these issues, held on two days in February of this year. Each party testified at trial, as did Elizabeth Sharpe, the court-appointed attorney for the minor children. Both parties also introduced various exhibit into evidence.
 I — FINDINGS OF FACT[1]
The court finds that it has jurisdiction over the marriage. One party has resided in Connecticut continually for more than one year prior to the bringing of this action. The parties were mated in New Canaan, Connecticut, on November 14, 1987. Two minor children, Paul Gregory, born on June 4, 1988, and Marcelle (Marcie), born on June 18, 1996, are legal issue of the marriage. No other minor children have been born to the wife since the date of the marriage. The parties have not been recipient of CT Page 7121 state assistance. The marriage between the pates has broken down irretrievably with no reasonable hope of reconciliation.
The plaintiff is forty-one years old and in good health. A high school graduate, she attended but did not complete one year of college. She has few vocational skills and limited income prospects. Before the parties mated, she was gainfully employed doing housecleaning and office work. She has also worked as a cosmetologist. During the marriage, by agreement of the parties, she stayed at home during the day to care for the couple's children. At the time of trial she held several part-time bookkeeping jobs, did research jobs for a local real estate developer, and was attempting to start a home business doing skin and hair care. After the pates separated, she had difficulty making ends meet and borrowed approximately $40,000 from her father to help pay for counsel fees, supplies for her new skin care business, and her weekly expense of $100 for supervised visitations with the children. Her current weekly income is approximately $330 gross and $280 net. Although her testimony about the income prospect of the skin care business seemed somewhat fanciful, she conceded in testimony at trial that she has a current earning capacity of $2,000 per month, and this court so finds. She incurs reasonable weekly expenses of approximately $480.
The defendant is forty-four years old and in good health. A high school graduate, he has for many years been self-employed as a painting and wallpaper contractor, for a business run out of the family home. In the early years of the marriage he did primarily residential painting, but in more recent years he has primarily done commercial jobs. Because of the nature of his business, the defendant's earned income varies from year to year. From the evidence offered at trial,[2] the court finds the defendant's claims as to his income and expenses credible; at the time of trial he was earning gross and net monthly income of $6,931 and $5,344. The time and attention he has devoted to the pending proceedings, however, have depressed his income, and he thus has the potential for more income and asset than would be expected from his present earnings. His business pays $1,855 of his $5,580 in monthly expenses. Since August of last year he and the parties' children have lived in what the defendant described as a "house-sharing arrangement" in a Newtown home owned and also occupied by his nephew and his nephew's family. The defendant and the parties' children all have their own bedrooms there. The defendant pays his nephew $1,200 per month for rent and utilities.
The court heard testimony from both parties as to why each claims that the other is responsible for the breakdown in their relationship, but from the evidence offered and found credible at trial the court finds that both parties bear responsibility for the breakdown and neither is more at fault than the other. CT Page 7122
After the parties separated in early November 2000, there were no pendente lite orders of alimony or child support. They had various business and personal checking account, investment account, and securities account, mostly in the defendant's name only. After they separated, the defendant closed two commercial checking account to which his wife had access, removed a total of approximately $113,000 from these and various investment account, converted this amount to his personal use, and thereby prevented the plaintiff from having access to or use of any of this money (except for approximately $4,000 she withdrew before one account was closed). From those funds he repaid a loan to his mother of $20,000, spent at least $57,000 on counsel fees, and paid other living and household expenses. During the pendency of these proceedings, he also borrowed and repaid an additional $21,000 from various relatives. Over the years the defendant has become an active trader in short-term stocks, bonds, and other securities — in the year 2000, for example, he acquired various stocks for a total cost of $5,792,063, which he sold a net loss that year of $12,301. Some of his investment were in margin account that declined in value after the parties separated because of margin calls. The stock market decline also caused the value of the investment funds to decrease. At the time of trial, the defendant's stocks and bonds were worth only $3,650, and he also had two IRA's worth a total of $13,000.
While married the parties maintained a health insurance policy in the plaintiff's name on themselves and their children that was paid by automatic deduction from one of the defendant's business checking account. When the defendant dosed those account in early November 2000, he unknowingly cut off the payment source for the family's health insurance, which consequently was canceled. The parties offered conflicting testimony about whether the defendant knew this account was the source of paying for the health insurance, when he dosed those account. The court finds the defendant's statement that he did not so realize to be credible and that he inadvertently caused cancellation of the health insurance policy when he dosed the business checking account. When he learned that dosing these account had caused the health insurance to lapse, he immediately tried to reinstate it, but the health insurance cater refused to accept a check from him because the plaintiff "was the primary insured" on the policy. (Ex. C.) He then obtained new insurance only for himself and the two children; since then the plaintiff has had no health insurance. After the divorce began, he also stopped paying for car insurance on the plaintiff's motor vehicle, and that coverage also lapsed.
The parties do not own any real estate. When they mated, the defendant owned a house in Bridgeport, where they lived for many years until moving CT Page 7123 to a house owned by the plaintiff's father in New Canaan. After moving, they were unable to sell the Bridgeport house and thus rented it for a while but eventually lost the house through foreclosure. They lived together in the New Canaan home until early November 2000, when the plaintiff was arrested for assaulting the parties' son and a resulting protective order required that she vacate the residence. The two children remained there with the defendant. After the plaintiff's father began a summary process action against the defendant, the defendant moved with the two children to the Newtown house. Under the joint custody agreement approved by the court, Wolven, J., on January 16, 2002, the parties' son, Paul, lives with his father and will see his mother as approved by a family therapist to be selected by the GAL and Dr. Mark Gershowitz. The custody agreement describes the parties as sharing joint physical custody of their daughter, Marcy. During the school year, Marcy lives with her father during the school week and spends three of four weekends a month with her mother and the other weekend with her father; and the opposite schedule will apply during her school summer vacation. Thus, both parent have financial need for income and housing sufficient to meet Marcy's needs for significant portions of the year.
 II — DISCUSSION
Since the parties have agreed on custody and visitation matters, the issues facing this court concern the relevant financial orders: classification and distribution of marital property, allocation of debt, alimony, child support, and payment of fees for counsel, GAL and the AMC. The legislature has prescribed the criteria governing decisions on each of these issues. See General Statutes §§ 46b-62, 46b-81, 46b-82, and 46b-84. The court is not required to make explicit reference to the statutory criteria it has considered in making its decision or to make express findings as to each statutory factor. Caffe v. Caffe, 240 Conn. 79,82-83 (1997).
The plaintiff has requested that the court order the defendant to pay for her counsel fees and those of the GAL and AMC. She has also requested an order that he reimburse her the sum of $60,000 as "representing one-half of the asset spent down" by the defendant during the pending proceeding. She seeks an order of $2,000 per month in periodic alimony for fifteen years and urges no order of child support. She also want the defendant to assume full responsibility for paying for the children's health insurance. The defendant has requested that each party pay its own counsel fees and split equally the fees for the GAL and AMC and the cost of health insurance for the children. He seeks an order of child support while opposing any alimony.
"There are three stages of analysis regarding the equitable CT Page 7124 distribution of each resource; first, whether the resource is property within Section 46b-81 to be equally distributed (classification); second, what is the appropriate method for determining the value of the property (valuation); and third, what is the most equitable distribution of the property between the parties." Krafick v. Krafick, 234 Conn. 783,792-93 (1995). The court finds that all items listed on each party's financial affidavit as asset are property within the meaning of §46b-81 and hence subject to distribution by the court.
The major asset of the parties is the defendant's business, about which neither party introduced any evidence as to it value, other than the parties' income tax returns and the parties' testimony about the nature and earnings of the business. In view of the nature of the business, its most significant asset are the skill of the defendant and the reputation and good will of his business. Though there was no evidence as to the value of these asset, it is obvious that they have some value, simply from the continuing income the business produces. Should the court award the plaintiff any portion of the business, however, the defendant could probably start a new business easily and carry most of the old business' good will and reputation with him. Any such award to the plaintiff would thus be of uncertain value or worth.
The $113,000 spent by the defendant during this proceeding would have been, if still available, all money properly includable within the marital estate and available for distribution to the plaintiff. While the defendant's expenditures for counsel fees and living expenses, if reasonable in amount, might not contravene the automatic orders of Practice Book § 25-5, repaying a loan to his mother surely did, since the plaintiff did not give him permission to do so. Moreover, his sequestration of those funds prevented the plaintiff from having use of that money to repay her debt, pay for her counsel fees, or meet her daily living expenses; and his expenditure of those funds prevented that money from being available for distribution as part of the court's property award. Accordingly the court concludes, after considering all the statutory factors relevant to awards of property, alimony, and counsel fees, and in fashioning an overall "financial mosaic" that adequately takes into account the fact here and all those factors, that the final orders here should take into account the defendant's sequestration and expenditure of these funds.
The child support guidelines require the court to determine each party's actual current gross and net income and, using those figures, determine the presumptive current support amount. See Regs. Conn. State Agencies, §§ 46b-215a-2a (c) and (d). The court finds here that the presumptive current support amount, based on each party's income at the time of trial, would require the plaintiff to pay the defendant the sum CT Page 7125 of $106 per week in child support.
In the present case, however, it would be inequitable and inappropriate to order the presumptive amount, as application of two deviation criteria is appropriate here. A party's earning capacity may be considered as a criterion for deviating from the presumptive support amount, as may the special circumstances involved in shared custody situations. See Regs. Con. State. Agencies, §§ 46b-215a-3 (b)(1)(B) and 46b-215a-3 (b)(6)(A). The court finds that, because the plaintiff has an earning capacity of $2,000 per month, it would be inequitable and inappropriate to order the presumptive amount, based on the lesser amount of income currently being earned by the plaintiff, and is instead appropriate to consider her earning capacity as a deviation criterion.
Under the child support guidelines, considering the special circumstances involved in physical custody situations as a deviation criterion "is warranted only when (i) such arrangement substantially reduces the custodial parent's, or substantially increases the noncustodial parent's, expenses for the child; and (ii) sufficient funds remain for the parent receiving support to meet the basic needs of the child after deviation." The court finds that the plaintiff will incur substantially increased expenditures for the minor child as a result of sharing physical custody of the parties' minor daughter. The court further finds that considering this deviation criterion would nonetheless leave sufficient funds for the defendant to meet each child's needs after such a deviation. The court thus also finds it would be inequitable to apply the presumptive amount, or to apply only her earning capacity as a deviation criterion, without also considering this deviation criterion. The court's order as to child support set forth below accordingly takes into account both deviation criteria. The court expressly finds that its order will leave sufficient funds for the defendant to meet each child's needs after consideration of these criteria.
As for alimony, the substantial disparity in the parties' income result in part from their agreement during the marriage that the plaintiff would assume the major child-care responsibilities during the work day. Her vocational skills and capacity to earn income or acquire asset are substantially less than those of the defendant. In view of these fact and others discussed above, all the evidence found credible, and in consideration of all the statutory factors, the court finds that an award of alimony for a significant number of years is appropriate.
The final financial issue is the plaintiff's request that the defendant be required to maintain life insurance for the benefit of herself and the minor children. Such insurance would secure the court's order of alimony, provide the plaintiff with additional means to support herself CT Page 7126 and the minor children should the defendant die. Yet there is no evidence that the defendant has any such insurance now or is insurable, that such insurance is available or obtainable, or its cost. Accordingly, under the rule of Lake v. Lake, 49 Conn. App. 89, 89, 712 A.2d 989, cert. denied,246 Conn. 902, 902, 719 A.2d 1166 (1998), the court must deny the plaintiff's request.
The court appointed an attorney for the minor child (AMC) and guardian ad litem (GAL) in this case. In accord with this court's pretrial orders, the AMC and GAL have submitted affidavit of their fees. Neither party objected to those fees. After reviewing the affidavit, the court finds that the fees of each (AMC — $22,307.50; GAL — $30,725) were reasonable in this case and that each spent a reasonable number of hours in carrying out their duties here and charged a reasonable hourly rate. After considering the parties' respective financial abilities and the criteria set forth in § 46b-82, the court finds that an award of counsel fees to the plaintiff, and requiring the defendant to pay the remaining fees of the GAL and AMC, is appropriate and necessary here to avoid undermining the court's other financial orders.
 III — ORDERS
The court has carefully considered all of the evidence, including the exhibit and the testimony presented, according to the standards required by law. The court has observed the demeanor of the parties and evaluated their credibility. After considering all the statutory criteria for dissolving a marriage and entering orders regarding equitable distribution of property, alimony, support of minor children, orders of life and health insurance, and payment of the children's health expenditures, and the award of counsel fees, together with applicable case law and the evidence presented here, the court hereby enters the following orders:
1. Dissolution of Marriage: The marriage of the parties, having broken down irretrievably, is hereby dissolved.
2. Parenting Orders: The court incorporates by reference into it judgment here the pates' stipulation of January 16, 2002, as to custody and visitation of the children, which the court that date adopted and entered as an order of the Superior Court.
3. Equitable distribution of property: Each party may retain, free and dear of the other, all asset listed "on their respective affidavit, except as set forth below.
a. The court awards full title and ownership to the plaintiff of the CT Page 7127 plaintiff's IRA listed on her financial affidavit and of the defendant's Paine Webber and The Hartford IRA's listed on his financial affidavit. Plaintiff's counsel shall prepare the appropriate qualified domestic relations orders. The court will retain jurisdiction for purposes of approving the QDROs.
b. The court awards title and ownership interest in the Ford Crown Victoria to the plaintiff and to the Ford van and Ford Truck to the defendant. The parties shall execute any legal document necessary to effectuate any titles or ownership interest thereon.
4. Financial responsibility for indebtedness: Except for fees awarded under paragraph nine below, each party shall be responsible for paying all debt and liabilities listed on their respective financial affidavit, and shall indemnify and hold the other harmless thereon.
5. Child Support:
a. The defendant shall pay the plaintiff child support in the amount of $110 per week until the oldest child graduates from high school or reaches age nineteen, whichever comes later. After that, the non-custodial parent shall pay child support in an amount to be determined by a court of competent jurisdiction based on then-applicable child support guidelines.
b. Health insurance for the minor children
Under General Statutes § 46b-84 (f), the court dissolving a marriage must include provisions in the support order for health insurance coverage for any minor children. The defendant shall maintain health insurance coverage for the two minor children.
c. Unreimbursed child care and health-related expenses
The plaintiff shall pay 15% and the defendant 85% of any unreimbursed medical and health-related[3] expenses for the minor children (after the first one hundred dollars a year, which will be the responsibility of the defendant) and of reasonable child care expenses necessary to allow either parent to maintain employment.
6. Alimony:
a. Periodic alimony. The defendant shall pay alimony to the plaintiff in the amount of $300 per week for ten years from the date of this decision. Such amount shall terminate upon death of either party, remarriage of the plaintiff, or her cohabitation with a male pursuant to CT Page 7128 General Statutes § 46b-86 (b).
b. Lump sum alimony. The defendant shall pay the plaintiff lump sum alimony in the amount of $25,000. At least one-fifth of this amount shall be paid by the end of each calendar year, with the first payment due on December 31, 2002, until the amount is paid in full.
7. Counsel fees: The defendant shall be responsible for paying the fees of the guardian ad litem and attorney for the minor child. In addition, the defendant shall pay the plaintiff $10,000 in counsel fees.
Judgment will enter accordingly.
BY THE COURT
STEPHEN F. FRAZZINI JUDGE OF THE SUPERIOR COURT
DOCKET # FA 00-0181342 S SUPERIOR COURT DONNA BARNAS JUDICIAL DISTRICT OF STAMFORD- NORWALK vs. REGIONAL FAMILY TRIAL DOCKET PAUL BARNAS OCTOBER 2, 2002
 CORRECTED MEMORANDUM OF DECISION
FRAZZINI, JUDGE.
On June 4, 2002, this court issued a memorandum of decision dissolving the parties' marriage and entering financial orders after a limited contested trial on financial issues.
A portion of paragraph 5(a) with regard to the child support orders of said decision contains a scrivener's error. The court intended to order payment of child support from plaintiff to defendant, but erroneously ordered to the contrary. Accordingly, the court opens the judgment and said paragraph is hereby corrected to provide as follows:[1]
 "a. The plaintiff shall pay the defendant child support in the amount of $110 per week until the oldest child graduates from high school or reaches age nineteen, whichever comes later. After that, the non-custodial parent shall pay child support in an amount to be determined by a court of competent jurisdiction based on then-applicable child support guidelines."
In all other respects, the June 4, 2002, Memorandum of Decision shall remain as previously rendered, the court having considered all of the evidence and the applicable statutory provisions.
The court invites the parties to submit written argument, or to request a hearing before the court, as to whether the court's action today requires any additional orders to rectify the court's scrivener's error or effectuate the court's Memorandum of Decision. In addition to any other rights they may have under the law, the parties should submit written requests for such a hearing, or any written argument they may wish the court to consider, within twenty days of today's date.
Judgment shall enter accordingly.
BY THE COURT,
 STEPHEN F. FRAZZINI JUDGE OF THE SUPERIOR COURT